IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  21CR1173

ABEL NAVARETTE MEDRANO,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon Defendant's Notice of Appeal (Doc. 25), filed September 24, 2021, from the Magistrate Judge's order of detention. This Court held a hearing on the Appeal on October 13, 2021; AUSAs Luis Martinez and Matthew Ramirez appeared for the United States and AFPD Daniel Phillips appeared for Abel Navarette Medrano, who also was present. The evidence adduced at the hearing included testimony of Defendant's mother, Griselda Medrano Navarrete; his daughter, Kimberly Navarrete; and Defendant.

This Court has reviewed the Criminal Complaint (Doc. 1), the Order of Detention Pending Trial (Doc. 8), Opposed Motion to Reopen Detention Hearing (Doc. 11), Minutes of hearing on August 31, 2021, (Doc 20), Pretrial Services Reports (Docs 6 and 33), the evidence adduced at the hearing on October 13, 2021, the arguments of counsel and the applicable law. Having considered the foregoing, and for the following reasons, the Court affirms the Order of the Magistrate Judge and orders the defendant be detained pending trial.

*I. Standard of Review and Applicable Law*

"The standard of review for the district court's review of a magistrate judge's detention or release order under [18 U.S.C.] § 3145(a) is de novo." *United States v. Cisneros*, 328 F.3d

610, 616 n.1 (10th Cir. 2003). "A defendant may be detained pending trial if a judicial officer

finds that no condition or combination of conditions will reasonably assure the appearance of the

person as required and the safety of any other person and the community." *United States v.*

*Mobley*, 720 Fed. Appx. 441, 444 (10th Cir. 2017) (citing 18 U.S.C. § 3142(e)(1)). "The

government bears the burden of proving risk of flight by a preponderance of the evidence and

dangerousness to any other person or the community by clear and convincing evidence." *Id.*

(citing *Cisneros,* 328 F.3d at 615).

*II. Findings and Analysis*

      The United States' position is that the defendant should be detained because he is both a

risk of flight and a danger to the community.  In deciding whether to release or detain a

defendant pending trial,[1] the Court considers the following factors set forth in Section 3142(g):

    **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

    **(2)** the weight of the evidence against the person;

    **(3)** the history and characteristics of the person, including—

        **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal,

---

[1] When a crime of violence is charged, "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community…." 18 U.S.C. § 3142(e)(2). The offense charged here, Reentry of a Deported Alien, is not a crime of violence as contemplated by Section 3142, and so the presumption does not apply here.

or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

First, with regard to whether Defendant is a danger to the community, the United States points to his criminal history as documented in the Pretrial Services Reports. Specifically, the reports describe the following criminal charges: July 22, 2000, Count 1, Driving While Intoxicated, Count 2, No Driver's License, Count 3, Open Container, Count 4, Prohibited Noise (Disposition Unknown); December 23, 2011, Count 1, Aggravated Driving While Intoxicated, Count 2, Open Container on Person in Motor Vehicle Upon Road, Count 3, Failure to Maintain Traffic Lane, Count 4, Operation of Vehicle on Approach of Emergency Vehicle, (Conviction of Counts 1 and 4, probation and 2012 Motion to Revoke Probation); June 5, 2012, Contempt of Court (Disposition unknown); and December 15, 2016, Count 1 Possession of a Controlled Substance and Count 2, Possession of Marijuana – one ounce, first offense (Conviction for both counts and 3-year probationary sentence).

More specifically, the United States contends Defendant's history of driving while intoxicated and his drug-related felony conviction show he is a danger to the community. The Court agrees with the United States that DUI is seriously dangerous. However, the Court also notes the 10-year age of Defendant's DUI conviction and concludes it mitigates any present dangerousness. The Court also concludes that evidence of marijuana drug possession by itself does not rise to the clear and convincing standard that Defendant is a risk to the community. In doing so, the Court declines to conclude Defendant presently is a danger such that his release would put the community at risk. The question remains, however, whether Defendant is a risk of flight and the Court's findings, analysis and conclusion on that question follows.

3

*A. Nature and Circumstances of the Offense Charged*

Defendant presently is charged with reentry after a deportation based on a conviction for a felony drug offense. *See* 8 U.S.C. § 1326(a)(1) and (b)(2). (Doc. 1). Defendant was convicted of a felony drug offense (two counts) on or about December 11, 2017. (Doc. 33).[2] Subsequently, he was ordered deported and removed from the United States to Mexico on December 26, 2017. *(Doc. 1).*

On May 18, 2021, a United States Border Patrol Agent encountered Defendant in Doña Ana County, New Mexico. (Doc. 1) at 1. When questioned about his citizenship by the United States Border Patrol Agent, Defendant allegedly stated he "was a citizen and national of Mexico, present in the United States without Immigration Documents that would allow him to be or remain in the United States legally." *Id.* A records check conducted at the Santa Teresa Border Patrol station confirmed he had been deported from the United States and that he had not received permission from the "Appropriate Authority to reapply for admission into the United States." *Id.*

The Court finds the nature and circumstances of the offense charged, reentry, by its nature involves the willful failure to comply with the authority of the United States and with court orders. This factor, therefore, favors detention.

---

[2] The Criminal Complaint (Doc. 1) alleges defendant was deported subsequent to an aggravated felony conviction for "'Possession with the intent to distribute' in the State of Las Cruces [sic], NM on or about October 4, 2017.'" The Court construes this allegation as an error, noting the proximate dates and place of conviction but that the offense of conviction as described in the Pretrial Services Report was for possession of a controlled substance and not for possession with intent to distribute a controlled substance.

*B. Weight of the Evidence Against Defendant*

On December 26, 2017, Defendant was removed from the United States to Mexico after he had been convicted for a felony drug offense. Defendant later reentered the United States without first receiving permission from the Appropriate Authority to reapply for admission into the United States." *Id.* On May 26, 2021, a United States Border Patrol Agent encountered Defendant in Dona Ana County. When he was encountered by the Agent and asked about his citizenship, Defendant admitted that he is a Mexican citizen and national "present in the United States without Immigration Documents that would allow him to be or remain in the United States legally." *Id.* These facts weigh heavily against Defendant.

*C. History and Characteristics of Defendant*

Based on the pretrial services report and the evidence adduced at the hearing on this appeal, the Court finds Defendant was born in Mexico on December 4, 1974. (Doc. 33). Defendant testified at the hearing, as well as his mother and daughter.[3] Defendant has lived in the United States "25-27 years." Defendant states he was 17 years old when he originally came to the United States with his family.

Defendant's mother, Ms. Medrano, has been interviewed by Pretrial Services and approved to be his Third-party custodian. On examination, Ms. Medrano stated her son attended school in the United States and also attended the University of Texas at El Paso (UTEP), and "he got a degree there," receiving a grade average of "80 percent in all subjects." When asked about his ties to Las Cruces, Ms. Medrano stated "all his family is here, his mother, father, his siblings,

---

[3] The Court's reference and quotations of testimony are from the court reporter's original, unedited version of the hearing transcript. Any final transcript may contain some differences in page and line numbers.

his children, his grandmother. He has no ties to Mexico. Everything he knows is here. I believe he should be able to stay. . . . I am a citizen. His father is not a citizen, but his three brothers are all citizens and today, October the 13th, one of my children [] has been in the Marines now. He's serving his country." She initially states Defendant has never had any issue appearing for court in the past and he complied with all requirements and he never tried to flee. When asked the reason Defendant came back to the United States after being deported, his mother stated, "As a father he decided to take the plunge and cross over here. He has three children, ages 15, 19, [ ]." When asked if Defendant has any family in Mexico, his mother responded, "Absolutely none. No close family there. All of us are here. No close family there. All of us are here." When questioned if she was willing to help her son with "bail," she stated, "We are humble folk. We work for a living, but I can offer my child a car title if he wants [ ] and I also have $3000 I can give him." When questioned by the Assistant United States Attorney, about criminal history including arrest for DUI, Ms. Medrano stated she was "exceedingly" disappointed and agreed that DUI is dangerous.

Defendant's daughter, Kimberly Navarrete also testified. Ms. Navarrete stated she attends UTEP and studies biomedical science. She also stated Defendant has no family ties to Mexico, though he has had a job there since he was deported. Ms. Navarrete stated the reason she believes her father will comply with the law is that "he wants to be here. He wouldn't have risked coming over here if it weren't for his intentions, which were to help my siblings and I and be with his family."

Defendant testified on his own behalf. On direct examination he stated that while he had been charged for DUI twice and other offenses, and although at the time he was neither a United States citizen or Legal Permanent Resident, he nonetheless did not fail to appear for a court

6

hearing and complied "with everything that the judge instructed me at that time." He stated that after he was deported, he had no family in Mexico, he had to "start from scratch." When questioned by the AUSA about his immigration status before he was deported, however, Defendant was evasive and not clear.

> Question: So you were in this country . . . legally while that (DUI arrest) happened?

> Answer: No, sir, I was not here illegally, not entirely. There was a residence approval that was underway in immigration at that time. I was approved.

Defendant conceded that the reason a Motion to Revoke Probation was filed (in 2012) was because he did not comply with all the rules and regulations the court imposed.

Defendant's family ties to the United States are substantial. The Court finds Defendant has family members, some of whom legally reside in this community and also are United States citizens. He resided in the United States for approximately 25-27 years and attended school and college before he was deported. The Court finds Defendant was neither a citizen nor legal permanent resident of the United States before he was deported and from his ambiguous responses to questions, concludes that he was most likely present unlawfully. The Court also finds Defendant has minimal if any family ties to Mexico and that he has resided in Mexico approximately three years before his recent arrest and had been employed there in a factory.

It is clear from the testimony that Defendant prefers to remain in the United States and be with his family. Indeed, Defendant's family ties are a significant factor under Section 3142. Even so, while Defendant maintains the right to be presumed innocent and the burden remains on the United States to prove his is guilty beyond a reasonable doubt, the Court also considers the weight of the evidence here very strong. Even if Defendant is not convicted of the instant felony re-entry immigration offense, he faces the great possibility he will be removed once again from

the United States.[4]  The nature of the re-entry offense by itself indicates an unwillingness to comply with the law of the United States, as well as his history of violating local laws and failing to comply with conditions of probation.  Considering these facts and the fact Defendant has apparently been living and working in Mexico for three years, the Court is not persuaded Defendant's family ties in the United States are sufficiently strong to offset the high risk he will not appear in Court as required and not flee the jurisdiction.  This Court concludes Defendant is a flight risk.

This Court also has considered whether there are any conditions or combination of conditions that could be fashioned to assure his presence.  For example, the Court has considered Ms. Medrano's willingness to be a third-party custodian and commit $3000 cash and a car title to assure Defendant's presence.  While the Court finds Ms. Medrano credible and sincere, the Court is not persuaded that any condition or combination of conditions in this case, such as a bond or a third-party custodian, would mitigate the Defendant's risk of non-appearance motivation to flee while this case remains pending.

Having considered the foregoing Section 3142(g) factors, the Court concludes by a preponderance of evidence that Defendant is a risk of flight and that no condition or combination of conditions will assure his appearance as required.

*III.  Conclusion*

Weighing the Section 3142(g) factors, in particular the weight of the evidence, family ties and ties to the community and Mexico, Defendant's history of violating the law, the Court

---

[4] The Court reiterates the decision on Defendant's immigration status and whether or not he will will be allowed to remain in the United States or again be removed any point is not within this Court's purview.  Indeed, the initial decision remains with the appropriate administrative immigration authority.

concludes that a preponderance of the evidence shows that Defendant is a flight risk and that no condition or combination of conditions will reasonably assure his appearance as required.

IT ORDERED that

1. the Order of the Magistrate Judge (Docs. 8, 20) detaining Defendant is affirmed; and

2. Defendant shall remain in the custody of the United States Marshal pending trial.


UNITED STATES DISTRICT JUDGE

9